IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-2386 |
| | § | CIVIL ACTION NO. H-11-1814 |
| | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The United States has moved for leave to file its First Amended Answer and Counterclaims in these cases. (Docket Entry No. 88 in 4:10-CV-02386; Docket Entry No. 37 in 4:11-CV-01814).[1] ExxonMobil partially opposes each motion on the basis that it is filed too late and, if granted, would require additional discovery. (Docket Entry 89).[2]

Based on the pleadings; the motions, responses, and replies; the record; and the applicable law, this court grants the motions for leave to file an amended answer and counterclaims. The amended pleadings are deemed filed on the date this order is entered. The reasons are explained below.

**I.     The Legal Standard**

Rule 15(a) of the Federal Rules of Civil Procedure provides that court should "freely give

---

[1] Citations are to the record in *Exxon Mobil Corp. v. United States*, 10-CV-2386 (S.D. Tex. filed Mar. 29, 2010).

[2] ExxonMobil does not oppose the request to add additional defenses Nos. 3 through 8 in the Amended Answer and Counterclaims in Civil Action No. 10-02386. (Docket Entry No. 89 at 1 n.1).

leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Rule 16(b) requires a district court to enter a scheduling order setting deadlines, including for pleading amendments. *See* FED. R. CIV. P. 16(b)(1). By limiting the time for amending pleadings, Rule 16(b) is designed to ensure that "at some point both the parties and the pleadings will be fixed." *See id.* (Advisory Committee Notes to 1983 Amendment). A district court has "broad discretion" in ruling under Rule 16 and Rule 15, "to preserve the integrity and purpose of the pretrial order" and to manage the case fairly and efficiently. *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979).

The Rule 16(b) "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend filed after the deadline set in a scheduling order. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010). The "good cause" standard requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (internal citations omitted). Courts consider four factors in deciding whether there is good cause to amend a scheduling order: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quotation marks and citations omitted).

If the movant satisfies Rule 16(b)'s requirements, the court determines whether to grant leave to amend under the more liberal Rule 15(a)(2) standard. A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "undue delay, bad faith or dilatory

motive[,] . . . undue prejudice to the opposing party, and futility of amendment." *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996).

**II.     Analysis**

    **A.     Good Cause Under Rule 16(b)**

Because this court's scheduling order set October 2011 as the pleading amendment deadline, the United States must show good cause. The issue is whether the failure to assert the indemnity counterclaims in the July 2010 answer to ExxonMobil's complaint in the Baytown case or by the October 2011 scheduling deadline precludes showing good cause for doing so in April 2013.

The primary argument the United States makes is that neither the case law governing indemnity claims for contract language similar to that present here, nor its own position on such claims, was sufficiently clear in July 2010 or October 2011 to enable it to assert the indemnity counterclaims. The United States contends that the case law and its position did not become sufficiently clear until recently.

During part of the relevant period, the United States was arguing in *United States v. ConocoPhillips Co.*, W:11-cv-167 (W.D. Tex. filed June 16, 2011), that similar contract language predating the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) was neither sufficiently broad nor specific to apply to CERCLA response costs. (Docket Entry No. 91-1 (Response to ConocoPhillips Company's Motion to Dismiss & Memorandum in Support at 3 & n.4 & 5, *United States v. ConocoPhillips Co.*, W:11-cv-167 (W.D. Tex. Aug. 31, 2011))). The United States points out that after the Western District of Texas issued its decision in *ConocoPhillips* on September 30, 2012, 2012 WL 4645616 (W.D. Tex. Sept. 30, 2012), and the case was resolved in November 2012, the United States did not file a notice of appeal. This decision was

3

reached after consultation among: (1) the Justice Department office that litigated the case in the trial court; (2) the Appellate Section of the Environment and Natural Resources Division; (3) the relevant client agency or agencies; and (4) the Office of the Solicitor General.

Before *ConocoPhillips*, the United States had opposed applying pre-CERCLA indemnity provisions to CERCLA response costs in other cases similar to these ExxonMobil suits. *See, e.g.*, *E.I. Du Pont de Nemours & Co. v. United States*, 365 F.3d 1367, 1372–73 (Fed. Cir. 2004); *Cadillac Fairview/California, Inc. v. United States*, 299 F.3d 1019, 1027-28 (9th Cir. 2002), *aff'g Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, No. 93-7996 MRP (Bx), 1997 WL 149196 (C.D. Cal. Feb. 21, 1997). ExxonMobil points out that a district court ruled against the government's position in *Elf Atochem v. North America v. United States*, 866 F. Supp. 868 (E.D. Pa. 1994), a case in which the United States asserted a counterclaim seeking indemnity for CERCLA response costs on behalf of the Defense Plant Corporation. ExxonMobil also points out that in 2004, the Federal Circuit ruled against the government's position in *DuPont v. United States*, 365 F.3d at 1372–73, and in 2002, the Ninth Circuit ruled against the government's position in *Cadillac Fairview*, 299 F.3d at 1027–28. According to ExxonMobil, the government should have known of its indemnity counterclaim in time to assert it in July 2010 or at least by October 2011.

The United States responds that *Elf Atochem* was for an extended period the only case on point and, as a district court case, was not binding. Litigation of the issue continued after *Elf Atochem*. After the *DuPont* and *Cadillac Fairview* decisions on applying pre-CERCLA indemnity clauses to cover CERCLA response costs, the United States continued to try to reconcile the position it should take in cases such as *ConocoPhillips*, in which opposing parties sought to enforce pre-CERCLA indemnity provisions against the United States in CERCLA litigation, with cases in which

4

pre-CERCLA indemnity provisions appeared to benefit the United States. The United States asserts that it was not until recently that the law, and the position the government could take on the law, became clear.

All large law firms struggle to avoid conflicts of interest. The Department of Justice, the country's largest law firm, has the distinct additional challenge of an acute need to avoid conflicting positions on specific issues. This challenge is complicated by the size of the Department, the diversity of its practice, the number of divisions it includes, and the fact that it is frequently both a plaintiff and a defendant in civil cases and has responsibilities for both civil and criminal cases all over the country. When internally conflicting positions are at issue, the Department must seek guidance from the parts of the government it represents and from the various parts of the Department that might be affected. Before implementing any decision, the Department must ensure that it has approval from its government clients and from the necessary parts of the Department itself. The work and time required for these steps is often significant. When, as here, the law is uncertain and evolving, the work and time needed to resolve these conflicts increase commensurately.

The positions the United States has taken, and the timing of the present motions, reflect these problems and the process necessary to address them. From 2010 (when ExxonMobil filed this litigation) through 2012, the Department did not assert a contract claim or counterclaim of indemnity in a CERCLA case based on an indemnity agreement that predated CERCLA. The United States states that its research has shown that the Department has not asserted such a claim or counterclaim in a CERCLA case since *Elf Atochem*. (Docket Entry No. 90 at 4 n.4). In 2012, the Department decided not to appeal the result in *ConocoPhillips*, and in 2013, Department attorneys held further discussions both within the Department and with military agency counsel on reconciling positions

the United States might take in various CERCLA cases. The United States has shown why the need to avoid inconsistent positions made it unable to assert the proposed counterclaims in July 2010, by the October 2011 deadline to amend pleadings, or much earlier than March 2013, when the United States advised ExxonMobil's counsel and the court of its intent to move for leave to amend. The United States provided that notice three months before the discovery deadline and a month before it moved for leave to amend. The additional time that elapsed before the United States filed its motions was to permit ExxonMobil to consider whether it would agree to the proposed amendment.

That the United States tailored its position to the specific indemnity language of the lease agreements further explains its inability, even with due diligence, to file its proposed indemnity counterclaims within the scheduling order's deadline for amending pleadings. After examining the wartime lease agreements for Baytown and for Baton Rouge — which were not produced until November 2011 — the United States decided that it would claim indemnity only when the lease agreement used broad language to characterize the risks for which ExxonMobil's predecessor promised to indemnify the United States. The United States did not move for leave to assert an indemnity counterclaim as to the Baytown Ordnance Works, but did for the Plancor Lease Agreements and the Baton Rouge Lease Agreements. (Docket Entry No. 90 at 5 n.6).

The importance of the amendment is an additional factor for the court to consider in analyzing a motion for leave to amend under Rule 16(b). As in many CERCLA cases, the response costs are significant. The potential for indemnity for those costs is significant to the defense in these cases.

Finally, as explained further below, to the extent that additional time is needed to conduct pretrial discovery or file pretrial motions in response to the indemnity counterclaims, a brief

adjustment of the scheduling order should suffice. Although this court is mindful of the need to proceed efficiently, a months-long extension in a case based on events that took place over a half-century ago is unlikely to prejudice the parties or impede the interests of justice.

The United States has shown good cause under Rule 16(b) to amend its pleadings.

### B. The Rule 15(a) Factors

The Rule 15(a) factors also favor granting the motion for leave to amend. The record does not reveal either undue delay or bad faith in the timing of the proposed amendment. Nor will ExxonMobil be unduly prejudiced by the amendments. ExxonMobil suggests that "for the sake of prudence," it may need additional discovery "related to the negotiation, formation and performance of the underlying lease agreements." (Docket Entry No. 89 at 11). But it is unclear whether or to what extent more discovery will be needed. Both parties have thoroughly searched for relevant documents on wartime contracting between the United States (including the Defense Plant Corporation, which signed these lease agreements) and ExxonMobil's predecessors at the Baytown and Baton Rouge sites. It is doubtful that either party has many additional documents relevant to construing the Plancor lease agreements' indemnity provisions. Neither party has identified living fact witnesses able to testify about these lease agreements. Because the issues raised are primarily legal issues, the need for further expert analysis and reports or discovery is doubtful. The timing of the amendments has not prevented ExxonMobil from discovering facts that would otherwise have been available, and additional time for fact or expert discovery should not be required. Even if an extension is necessary, it can be brief and tailored to the discovery needed. Such an extension, in a case involving events that occurred so long ago, does not so prejudice ExxonMobil as to preclude the amendments.

Finally, ExxonMobil argues that the proposed amendments and counterclaims are futile. A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). "[T]he same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to determining futility. *Id.* (internal quotation marks omitted). The present record is inadequate to find futility. The interests of efficiency and thorough consideration are better served by granting the motion for leave to amend and allowing the parties to file appropriate motions and briefs testing the indemnity claims under either Rule 12(b)(6) or Rule 56.

## III. Conclusion

The motions filed by the United States for leave to amend to file its first amended answer and counterclaims are granted.

SIGNED on July 9, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge