**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

_____
                                                      )
EXXON MOBIL CORPORATION,              )
                                                      )
                        Plaintiff,              )
                                                      )
              v.                                )          Civil Actions No. 4:10-cv-02386
                                                      )          & 4:11-cv-01814 (LHR)
UNITED STATES OF AMERICA,             )
                                                      )
                        Defendant.          )
_____)

**DEFENDANT UNITED STATES OF AMERICA'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO EXXON MOBIL CORPORATION'S
<u>MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>**

When viewed alongside the concessions Exxon made at the March 11, 2004 hearing on

the parties' cross-motions for summary judgment and the arguments it originally presented in

support of summary judgment, Exxon's recent "Supplemental Reply" is a study in contradiction.

<u>See</u> ECF No. 137 in Case No. 4:10-cv-2386.  For example, having conceded that it is a *liable*

party with respect to both the Refineries and the Plancors,[1] Exxon still insists that the Court

should treat it like an *innocent* party and award it a judgment holding the United States jointly

and severally liable.  Supp. Reply at 6-8.  Exxon does not dispute, however, that under the Fifth

Circuit's holding in <u>Elementis Chromium L.P. v. Coastal States Petroleum Co.</u>, 450 F.3d 607,

613 (5th Cir. 2006), a CERCLA claim by one liable party against another is for several liability

only.  Nor does Exxon present any reason to justify departure from this controlling precedent.

As to the question of whether, in the Baytown case, Exxon is limited to a claim under

section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), the Court should find as a matter of

---

[1] In the interest of brevity, the United States generally assumes familiarity with acronyms or
other terms defined in previous summary judgment filings, such as "Plancor."

undisputed fact that all of the alleged response costs Exxon has incurred at the Baytown

Complex since March 15, 1995—the date it signed the first of two Agreed Orders with the State

of Texas—are subject to an exclusive cause of action under section 113(f)(3)(B).[2]  Exxon offers

no credible evidence of any "costs 'incurred voluntarily outside the scope'" of those orders since

that date.  Supp. Reply at 10 (quoting United States v. Pharmacia Corp., 713 F. Supp. 2d. 785,

789 (S.D. Ill. 2010)).  Furthermore, any costs that Exxon allegedly incurred "voluntarily" *prior*

to March 15, 1995, also became subject to section 113(f)(3)(B)'s contribution remedy when

Exxon triggered that right by entering into the Agreed Orders, which comprehensively govern all

cleanup activities within the Baytown Complex.  Thus, Exxon may not separately sue under

section 107(a) to recover these earlier-incurred costs, regardless of whether the statute of

limitations applicable to section 107(a) claims has run.  See Appleton Papers, Inc. v. George A.

Whiting Paper Co., 572 F. Supp. 2d 1034, 1041-43 (E.D. Wisc. 2008); Whittaker Corp. v. United

States, No. 2:13-cv-01741-FMO-JC, 2014 WL 631113 at *5-9 (C.D. Cal. Feb. 10, 2014).

     Finally, continuing its pattern of contradiction, Exxon now argues simultaneously that the

Agreed Orders "qualify as 'administrative or judicially approved' settlements" for purposes of

determining whether Exxon is entitled to relief under section 113(f)(3)(B), Exxon Mot. at 37, but

*not* for purposes of determining which statute of limitations applies to that claim.  Supp. Reply at

2-4, 12-20.  Exxon cannot have it both ways.  The United States continues to agree with Exxon's

*original* argument—which it has not expressly disavowed—that the Court should follow Trinity

Indus., Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 136 (3d Cir. 2013), and hold that the

---

[2] The term "Complex" includes the Refinery and chemical plants at Baytown (with the latter plants including the WWII-era Plancors and Baytown Ordnance Works), but excludes adjacent water bodies such as the Houston Ship Channel where the United States disputes that Exxon has yet incurred any CERCLA response costs.  See US Opp. at xiii (Glossary of terms) & 27 n.10.

2

Agreed Orders gave rise to a contribution right under section 113(f)(3)(B) because they "resolved liability" for "response actions" or "the costs of such actions." See Exxon Mot. at 37-41; US Opp. at 5-10. The Court should further hold, however, that this claim is time-barred under the 3-year statute of limitations in 42 U.S.C. § 9613(g)(3), because that provision supplies the exclusive limitations period for *all* "contribution" actions under CERCLA. See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 166-68 (2004).

## I.     EXXON'S 107(a) CLAIMS ARE FOR SEVERAL LIABILITY ONLY.

As we previously demonstrated, the scope of liability under CERCLA is "determined from traditional and evolving principles of common law," Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 599, 613 (2009), and courts applying those principles consistently have held that the remedy of one liable party under CERCLA against another liable party is a judgment of several liability, not joint and several. US Opp. at 28-34 (citing cases and the Restatement (Second) of Torts). At the March 11 hearing, after the Court asked whether controlling caselaw governs any of the issues presented, the United States emphasized that Elementis Chromium—previously discussed in its Opposition—is dispositive on this issue because the Fifth Circuit squarely held that "when one liable party sues another liable party under CERCLA . . . the imposition of joint and several liability is inappropriate." Id. at 613; see US Opp. at 32-33.[3] Exxon's Supplemental Reply does not contest this point of law (in fact, none of Exxon's briefs even *mention* Elementis Chromium); therefore, Exxon should be deemed to have conceded it.

---

[3] The United States also emphasized, as it previously explained in its Opposition, that the Supreme Court's decision in United States v. Atlantic Research Corp. ("ARC"), 551 U.S. 128 (2007), did not overrule the above-quoted portion of the Fifth Circuit's holding because ARC expressly did not decide whether a liable party may obtain a judgment of joint and several liability. See US Opp. at 33.

Moreover, while Exxon originally claimed that it did not "operate" the Refineries or the Plancors during the wartime periods[4]—effectively asserting that it was an "innocent party" during those time periods at least with respect to the Plancors—it later conceded at the March 11 hearing that it *was* a wartime operator of both the Refineries *and* the Plancors.  As an admittedly *liable* party, therefore, Exxon is precluded by Fifth Circuit law from obtaining a judgment holding the United States jointly and severally liable under CERCLA.[5]

Most of the cases Exxon relies on are distinguishable because they involved claims by parties asserting innocence or by governmental plaintiffs in their enforcement capacity, not by admittedly *liable* private parties.  For example, in PCS Nitrogen Inc. v. Ashley II of Charleston, Inc., 714 F.3d 161 (4th Cir. 2013), the district court had bifurcated the trial proceedings and entered a judgment of joint and several liability against defendants following the first trial. Unlike Exxon, however, the plaintiff asserted that it was covered by CERCLA's "bona fide prospective purchaser" exemption and thus not liable.  Id. at 171-72, 179;[6] see also Burlington, 556 U.S. at 604-05 (claims by the United States and California); Lyondell Chem. Co. v. Occidental Chem. Corp., 608 F.3d 284, 289 (5th Cir. 2010) (discussing joint and several liability in the context of a United States enforcement action); Board of Cty. Comm'rs of La Plata v.

---

[4] See Exxon's Answers to United States' Requests for Admission 14-25 & 27-34 (admitting that Exxon owned the Refineries during WWII and the Korean War but denying that it operated the Refineries or the Plancors, or that it "arranged for disposal") (excerpts attached as Exhibit A).

[5] Exxon erroneously asserts that the United States has not conceded any liability under CERCLA, and further contends that this distinguishes the instant case from Halliburton Energy Servs. v. NL Indus., 648 F. Supp. 2d 840 (S.D. Tex. 2009).  Supp. Reply at 8.  To the contrary, the United States admits that it is a "covered person" for purposes of CERCLA liability with respect to a portion of each Complex due to its wartime ownership of Plancors at Baytown and Baton Rouge. See US Opp. at 43, 51 & n.21.

[6] In a subsequent trial, the district court rejected the bona fide prospective purchaser theory and accordingly included the plaintiff (now held liable) in its equitable allocation.  Id. at 172, 179.

Brown Grp. Retail, 768 F. Supp. 2d 1092, 1097 (D. Colo. 2011) (claims by La Plata County, "a political subdivision of the State" of Colorado), clarification denied, No. 08-cv-00855-LTB, 2011 WL 2669220 (D. Colo. July 6, 2011).  The remaining cases—all district court cases from outside the Fifth Circuit—conflict with Elementis Chromium.  See Supp. Reply at 7-8.

## II.    EXXON'S ONLY AVAILABLE CLAIM AT BAYTOWN IS FOR CONTRIBUTION UNDER SECTION 113(f)(3)(B).

### A.    The Agreed Orders Qualify As "Administrative Settlements" and Govern, at Minimum, All Costs at the Baytown Complex Since March 15, 1995.

#### 1.    The orders comprehensively govern all cleanup activities since 1995.

After previously alleging that virtually *all* of its Baytown response costs were incurred "in accordance with the Agreed Orders and a subsequent . . . corrective action plan setting forth specific corrective action requirements for the Baytown Site," Baytown Compl. ¶ 28, and that these orders and the cleanup actions taken thereunder were intended to "fully address th[e] contamination at the Baytown Site," id. ¶ 27,[7] Exxon now tells a different story—that they were "intended to resolve only specific regulatory violations of waste management requirements identified in reports from the Texas Natural Resources Conservation Commission" ("TNRCC").  Supp. Reply at 2.  The Court, however, should treat the allegations in Exxon's Complaint as binding admissions of fact.  See El Paso Natural Gas Co. v. United States, No. 12-5156, 2014 WL 1328164 at *9 (D.C. Cir. Apr. 4, 2014) (citing First and Second Circuit decisions).

Moreover, the text of the Agreed Orders supports Exxon's original allegations, not the revised characterization in its Supplemental Reply.  The orders require Exxon to perform a

---

[7] According to the Complaint, the only alleged response cost outside the scope of the Agreed Orders was "approximately $200,000" for a PRP search.  Baytown Compl. ¶ 29; see also id. ¶¶ 32, 42 & 51 (incorporating the above allegations into each count of the Complaint) (excerpts attached as Exhibit B).  Similarly, Exxon's Proposed Findings of Undisputed Material Fact did not suggest that any costs were outside the scope of these orders.  Exxon PF ¶¶ 289-93.

comprehensive suite of response activities to address all soil and groundwater contamination at the Baytown Complex, and will remain in effect until the State determines that final cleanup goals have been attained.  See US Opp. at 6-7 (citing key provisions of the orders).

Furthermore, the only evidence Exxon has submitted of post-1995 costs allegedly "outside the scope" of the Agreed Orders is the following statement:

> ExxonMobil has been working with the Texas Commission on Environmental Quality ("TCEQ") to establish a Facility Operations Area ("FOA") for the refinery and the chemical plant, respectively, at the Baytown Site.  TCEQ established the voluntary FOA program so that large industrial facilities could develop and implement a facility-wide, cost-effective approach for addressing contamination at the facility at issue under the approval and oversight of TCEQ, and this process is ongoing at the Baytown Site.

Decl. of Peter J. Gagnon ¶ 4 (ECF No. 121-2 in Case No. 4:10-cv-2386); Supp. Reply at 2.  This statement appears simply to describe a process for complying with the Agreed Orders, and we believe the evidence at trial will corroborate that reading.  At a minimum, Mr. Gagnon's statement fails to establish as an "undisputed fact" for purposes of summary judgment that any of Exxon's costs incurred since March 15, 1995 are outside the Agreed Orders' scope.

## 2.    The Agreed Orders qualify as "administrative settlements."

Exxon now points to "distinctions" between the Agreed Orders and the agreements that gave rise to section 113(f)(3)(B) contribution rights in other cases.  Supp. Reply at 2-4.  Not only is Exxon directly contradicting its earlier argument that the Agreed Orders "qualify as 'administratively or judicially approved' settlements under section 113(f)(3)(B)," Exxon Mot. at 37, but the purported "distinctions" are immaterial.

For example, Exxon now notes that the orders were issued under state regulatory authority and do not contain releases of "CERCLA" liability or even mention CERCLA, Supp. Reply at 2-3, despite its previous argument that the availability of section 113(f)(3)(B)

contribution "is not strictly limited to actions specifically taken pursuant to CERCLA."  Exxon

Mot. at 39.  Exxon's *first* argument was the correct one, because the plain text of Section

113(f)(3)(B) only requires that an agreement "resolve[] . . . liability for some or all of a response

action or some or all of the costs of such action."  42 U.S.C. § 9613(f)(3)(B).  Unlike the separate

contribution provision of 42 U.S.C. § 9613(f)(1)—which expressly applies only "during or

following any civil action under section 9606 of this title or under section 9607(a) of this title"—

section 113(f)(3)(B) makes no reference to CERCLA at all.  Accordingly, the contribution right

under section 113(f)(3)(B) is triggered by entry into an administrative order that provides for the

performance of work meeting CERCLA's definition of "response action" or for the payment of

the "costs of such action," regardless of whether the order itself was issued pursuant to CERCLA

or releases CERCLA liability.  See Trinity, 735 F.3d at 136 ("[W]e hold that § 113(f)(3)(B) does

not require resolution of CERCLA liability in particular."); Niagara Mohawk Power Corp. v.

Chevron U.S.A., Inc., 596 F.3d 112, 126 n.15 (2d Cir. 2010) (noting that "there is a great deal of

force to this argument given the language of the statute").

        Whether or not Exxon "admitted liability" by signing the Agreed Orders also is not

determinative of its contribution rights under section 113(f)(3)(B).  Supp. Reply at 2-3.  Parties

routinely enter into settlement agreements in a variety of contexts that "resolve" claims without

expressly "admitting" any party's liability.  There is no language in the Agreed Orders indicating

that they were not intended as a "final" resolution of Exxon's potential civil liability to the State

of Texas related to the environmental contamination at the Baytown Complex.  Indeed, they

contain only *one* express reservation of the State's potential claims for "criminal liability," thus

providing further confirmation that they fully resolved its potential claims against Exxon for civil

liability.  See A2793-94 (March 1995 Agreed Order, "General Ordering Provisions," ¶ 24).

Finally, contribution protection for "matters addressed in the settlement" arises under the terms of the statute *whenever* a "person" enters into an administrative settlement "resolv[ing] its liability to . . . a State." 42 U.S.C. § 9613(f)(2). Therefore, the Agreed Orders need not "expressly" provide for contribution protection in order to give rise to a right of contribution under section 113(f)(3)(B), as Exxon now seems to suggest. Supp. Reply at 3.

### 3.    Exxon cannot "choose" to seek these costs under section 107(a).

The Supreme Court has made clear that "§§ 107(a) and 113(f) provide two 'clearly distinct' remedies . . . '*a right to cost recovery* in certain circumstances, § 107(a), and *separate rights to contribution* in other circumstances.'" ARC, 551 U.S. at 138 (emphasis in original) (quoting Aviall, 543 U.S. at 163 & n.3). A plaintiff eligible to sue under section 113(f) cannot choose instead to sue under section 107(a); "[t]he choice of remedies simply does not exist." ARC, 551 U.S. at 140. Accordingly, section 113(f)(3)(B) is Exxon's exclusive statutory remedy for all costs it has incurred *at least* since March 15, 1995. See also infra Part II.B. (arguing the Court should reach the same conclusion for costs incurred *prior* to March 15, 1995).

The Court of Appeals cases Exxon cites (Supp. Reply at 4-6, 8-12) do not suggest that a plaintiff may "choose" to sue under section 107(a) when a contribution remedy is available. In Bernstein v. Bankert, for example, there were two sequential administrative orders on consent ("AOCs") signed in 1999 and 2002, respectively, and the Seventh Circuit held that section 113(f)(3)(B) was the exclusive remedy for costs under the 1999 AOC. See 733 F.3d 190, 206 (7th Cir. 2013) (as amended) ("[W]e agree with our sister circuits that a plaintiff is limited to a contribution remedy when one is available."), cert. denied, 134 S. Ct. 1024 (2014). The 1999 AOC required performance of an engineering evaluation and cost analysis and certain other tasks, while the 2002 AOC required implementation of EPA's selected removal alternative. Id.

8

at 203, 207.  The Seventh Circuit found that the 2002 AOC did *not* qualify as an "administrative settlement" (for reasons that are irrelevant here[8]) and permitted the plaintiff to seek costs pursuant to *that* order under section 107(a), presumably because it concluded that section 107(a) was the only available remedy for those costs.  Id. at 212-13.  Thus, Bernstein, like other appellate cases Exxon cites, is consistent with ARC in allowing PRPs to sue under section 107(a) if they have incurred their own costs *and have not triggered a contribution right under section 113(f)*.  ARC foreclosed, however, any notion that a PRP could "choose" to sue under section 107(a) even *after* a section 113(f) contribution right arises.

> **B.** **Section 113(f)(3)(B) Also Became the Exclusive Remedy for Costs Incurred *Prior* to March 15, 1995, Once Exxon Entered into the Agreed Orders.**

The Court should also hold that when Exxon entered into the Agreed Orders, section 113(f)(3)(B) became the exclusive remedy for any costs that Exxon allegedly incurred "voluntarily" at the Baytown Complex prior to March 15, 1995.  See United States' Notice of Supplemental Authority, ECF No. 135 in Case No. 4:10-cv-02386 (discussing Whittaker, 2014 WL 631113 at *5-9, and Appleton, 572 F. Supp. 2d at 1041-43).  Contrary to Exxon's argument (Supp. Reply at 8-12), "[a] party's procedural circumstances," not the voluntary or involuntary nature of its costs, determine what remedy is available.  Whittaker, 2014 WL 631113 at *7.  Simply put, "'CERCLA does not ask whether a person incurs costs voluntarily or involuntarily.  It asks whether a . . . person has been previously subjected to a civil action under § 9606 or § 9607, and so on.'"  Id. (quoting Bernstein, 733 F.3d at 210); accord ARC, 551 U.S. at 138.  Although Whittaker and Appleton both involved section 113(f)(1) contribution, Exxon offers no

---

[8] Specifically, the 2002 AOC included language making EPA's release of liability contingent on completion of the cleanup.  Id. at 212.  The Agreed Orders here do not include such language.  The United States argued in Bernstein that *both* AOCs qualified as "administrative settlements" and that all costs were subject to an exclusive remedy under section 113(f)(3)(B).  Id. at 207-15.

9

reason why this statutory analysis should lead to any different conclusion where contribution arises under section 113(f)(3)(B), particularly when the settlement at issue addresses cleanup comprehensively.  See Bernstein, 733 F.3d at 209-10 (surveying cases and finding that "not a single one . . . treated the voluntary/compelled costs dichotomy as dispositive").

## III.    EXXON'S CLAIM UNDER SECTION 113(f)(3)(B) IS TIME-BARRED.

On the statute of limitations question (Supp. Reply at 12-20), the United States respectfully refers the Court to:  (1) pages 18 to 26 of the United States' Opposition, and its oral presentation at the March 11 hearing; (2) Aviall, which is controlling on this question and effectively overruled Sun Co., Inc. v. Browning-Ferris, Inc., 124 F.3d 1187 (10th Cir. 1997), Geraghty & Miller, Inc. v. Conoco, Inc., 234 F.3d 917 (5th Cir. 2000), and other cases on which Exxon relies, as explained at the hearing (see also US Opp. at 19-23); and (3) the following Court of Appeals decisions (also cited at the hearing) interpreting 42 U.S.C. § 9613(g)(3) as supplying the limitations period for *all* "contribution" actions, consistent with Aviall:  RSR Corp v. Commercial Metals Co., 496 F.3d 552, 556-58 (6th Cir. 2007); Niagara Mohawk, 596 F.3d at 128 n.19; and Morrison Enters., LLC v. Dravo Corp., 638 F.3d 594, 609 (8th Cir. 2011).  The United States also notes that Exxon's reliance on cases involving "unilateral administrative orders" is inapposite.  Such orders are issued "unilaterally," *i.e.*, without consent, are not "civil actions" or "settlements," and thus do not give rise to any contribution claim under section 113.  See Supp. Reply at 18 (citing Sun Co., supra, and GenCorp, Inc. v. Olin Corp., 390 F.3d 433 (6th Cir. 2004)).  Finally, Bernstein did not decide which statute of limitations applied to contribution based on the 1999 AOC (since the claim was time-barred under either 42 U.S.C. § 9613(g)(2) *or* (g)(3)), contrary to Exxon's representation.  Compare 733 F.3d at 206-07, with Supp. Reply at 18.  In short, *none* of the four appellate decisions Exxon cites supports its argument on this issue.

Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources
   Division

DATED:  April 18, 2014           By:   /s/ BRIAN H. LYNK_____
MICHAEL D. ROWE  (Attorney-in-charge)
BRIAN H. LYNK
T. MONIQUE PEOPLES
STEPHANIE J. TALBERT
ERICA M. ZILIOLI
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel.: (202) 514-6187
Fax: (202) 514-8865
brian.lynk@usdoj.gov

*Attorneys for the United States*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was served this 18th day of April 2014, via electronic mail, upon the following counsel for Plaintiff:

Tynan Buthod                          ty.buthod@bakerbotts.com

Daniel Steinway                    daniel.steinway@bakerbotts.com

Michael Patrick McGovern    michael.mcgovern@bakerbotts.com


                                        /s/ Brian H. Lynk_____
                                        Brian H. Lynk

12